1  MARGIE R. LARIVIERE (SBN: 172975)
   mlariviere@gordonrees.com
2  TINO X. DO (SBN: 221346)
   tdo@gordonrees.com
3  GORDON & REES LLP
   Embarcadero Center West
4  275 Battery Street, Suite 2000
   San Francisco, CA 94111
5  Telephone:  (415) 986-5900
   Facsimile:  (415) 986-8054
6

7  Attorneys for Defendants
   NORTHWESTERN MUTUAL and
8  THE NORTHWESTERN MUTUAL
   LIFE INSURANCE COMPANY
9

10                **UNITED STATES DISTRICT COURT**
11
                  **NORTHERN DISTRICT OF CALIFORNIA**
12

13
                                    )   CASE NO.  CV-13-5183 SI
14 ANAREGHINA WONG LAI,             )
                                    )   **THE NORTHWESTERN MUTUAL LIFE**
15                 Plaintiff,       )   **INSURANCE COMPANY'S MOTION IN**
                                    )   **LIMINE NO. 2 TO EXCLUDE EXPERT**
16     vs.                          )   **OPINION OF AND REPORTS PREPARED**
                                    )   **BY DR. MARTIN WILLIAMS**
17 NORTHWESTERN MUTUAL; THE         )
   NORTHWESTERN MUTUAL LIFE         )
18 INSURANCE COMPANY;, and DOES 1   )   Trial Date:    November 17, 2014
   through 50, inclusive,           )   Time:          9:00am
19                                  )   Courtroom:     10, 19th Floor
                                    )   Judge:         Hon. Susan Illston
20                 Defendants.      )
                                    )   Complaint Filed:    February 28, 2013
21                                  )   Removal Filed:      November 6, 2013
                                    )
22                                  )
                                    )
23                                  )   Filed Concurrently Herewith:
                                    )       (1) Declaration of Margie Lariviere
24                                  )
                                    )
25                                  )
                                    )
26 _____  )

27

28

## I. INTRODUCTION

Defendant The Northwestern Mutual Life Insurance Company ("Northwestern Mutual") moves this Court for an order excluding Dr. Martin Williams, Plaintiff, or any other witness from providing any evidence or trial testimony regarding the content or opinions set forth in his May 2014 and July 2014 expert reports. In the alternative, Northwestern Mutual seeks to exclude the testimony of Dr. Williams, Plaintiff, or any other witness related to Dr. Williams' second examination of Plaintiff and M-FAST test results.

Dr. Williams is a forensic psychologist. He was retained by Plaintiff to render an expert opinion about Plaintiff's medical condition, including whether Plaintiff was a malingerer. In preparing his May 2014 expert report ("First Report"), Dr. Williams did not review any material whatsoever. He did not review any of the previous reports and test results for malingering. His entire opinion was based solely on an examination of Plaintiff. He did not review medical records, her doctor's depositions, or discovery responses. Dr. Williams testified in his deposition that he limited his review to an examination only because that's what counsel asked him to do. Dr. Williams' opinion, given the limitations counsel placed on him, falls short of the *Daubert* standard because his forensic evaluation is based on insufficient facts; is not the product of reliable principles and methods; and falls below techniques for forensic evaluation that are generally accepted by the medical community.

With regard to the opinions set forth in Dr. Williams July 2014 report ("Second Report"), the opinions should be excluded as untimely and prejudicial to Northwestern Mutual. The Court set a June 20, 2014 deadline for the parties to serve expert rebuttal disclosures. This date was one month after the initial expert disclosure deadline and provided ample time for each party to respond to the opinions of opposing experts if they chose to do so. Fact discovery closed on June 13, 2014 so the experts had all relevant evidence before the deadline. There is no dispute that Dr. Williams had access to Northwestern Mutual's initial expert reports, all medical records, and all discovery prior to the deadline. Yet, it was not until the end of June that Plaintiff's counsel chose to provide that information to Dr. Williams. Only after the rebuttal deadline did Dr. Williams review some records, re-examine Plaintiff and administer an M-FAST test to detect malingering. Although other tests had

1  been used to detect malingering, the M-FAST test had not been used by any of Plaintiff's treating

2  doctors or any of the numerous doctors who performed independent medical evaluations of Plaintiff.

3    It is clear from Dr. Williams' Second Report that he offers new opinion based on the M-

4  FAST test and rebuts the expert opinions of Northwestern Mutual's experts.  There is no justification

5  for Dr. Williams' untimely report, he had unfettered access to testing Plaintiff and reviewing the

6  medical records and Northwestern Mutual's expert reports prior to the deadline.  Northwestern

7  Mutual is substantially prejudiced by this late report as, among other issues, Plaintiff is relying on

8  new testing- the M-FAST results – to now support her claim, which test results have never been

9  provided to Northwestern Mutual.  The Court properly excludes Dr. Williams from offering any

10 testimony regarding the opinions set forth in his Second Report.

11   **II.**  **FACTS**

12   **A.**  **Dr. Williams' Reports were Based on Insufficient Data**

13   Dr. Williams' deposition was taken August 20, 2014.  (Declaration of Margie Lariviere

14 ("Lariviere Decl.") at ¶ 2).  During the course of that deposition, Dr. Williams testified that he did

15 not review any documentation in connection with preparing the First Report, even though he was

16 aware Plaintiff had been claiming to be disabled for a ten year period.  (*Id.*; Ex. A [relevant excerpts

17 from Dr. Williams' deposition transcript at 19:7-17]).  Dr. Williams was also asked whether, in

18 making a medicolegal determination as a forensic psychologist, Dr. Williams would want to

19 consider whether the person being evaluated had a history of misrepresenting or lying to their

20 doctors about their functioning.  Dr. Williams testified in response, "I don't want to know anything"

21 because Plaintiff's counsel had instructed him to only examine Plaintiff, and not review any

22 collateral information, including medical records spanning ten years from the date of Plaintiff's

23 alleged injury   (*Id.* at 22:4-20).

24   Dr. Williams testified that he was a member of the Task Force on Specialty Guidelines,

25 through which the American Psychiatric Association publishes Specialty Guidelines for Forensic

26 Psychology.  (Lariviere Decl. at ¶ 2; Ex. A at 19:22-20:8; 25:22-26:7).  Dr. Williams testified that he

27 helped draft and that he follows these guidelines.  (*Id.* at 20:7-10).  Section 9.02 of these guidelines

28 provides as follows:

> Forensic practitioners ordinarily avoid relying solely on one source of data and corroborate important data whenever feasible. When relying upon data that have not been uncorroborated, forensic practitioners seek to make known the uncorroborated status of the data, any associated strength and limitations and the reason for relying upon that data."

(*Id.* at 26:8-15)

Dr. Williams testified that he had not reviewed a multitude of evidence in the possession of Plaintiff's counsel, including: Plaintiff's medical records from UCSF from 2005 to 2011, including neurological data; any of the IME reports conducted on Plaintiff from 2005 to 2011, which all found evidence of symptom exaggeration; Plaintiff's wedding reception video; Plaintiff's deposition video; surveillance footage of Plaintiff; the deposition transcript of Dr. Armas, Plaintiffs' treating psychologist for five years who withdrew her certification of Plaintiff's disability; the deposition transcript of Dr. Bitner, Plaintiff's treating psychiatrist, who also withdrew her certification of Plaintiff's disability.[1]  (*Id.* at 32:3-33:20; 38:5-13; 93:2-11).  Dr. Williams testified that he was not aware that Dr. Bitner withdrew her certification of Plaintiff's disability.  (*Id.* at 33:21-25).

On October 24, 2014, Plaintiff provided a copy of an invoice from Dr. Williams dated October 23, 2014.  (Lariviere Decl. at ¶ 9; Ex. D).  The invoice describes services rendered as "Document review in the matter of Dr. Wong-Lai, minimum estimate of ten hours for review of entire medical file.  Additional funds shall be requested if ten hours is not sufficient."  (*Id.*).  It is therefore clear that Dr. Williams has reviewed, or intends to review, Plaintiff's medical records *after* his August 20, 2014 deposition.

### B. Chronology of Events as Respects Expert Disclosures

On February 26, 2014, this Court issued a Pretrial Preparation Order that set the following deadlines:  June 13, 2014—Non-expert discovery cutoff; May 16, 2014 – last day to designate experts; June 20, 2014 – last day for expert rebuttals.

Northwestern Mutual disclosed Board Certified Psychiatrists Drs. Logan and Reich and Board Certified Neuropsychologist Dr. Sara Swanson as experts and produced their expert reports.

---

[1] Following the First Report, the only records Williams did review was the reports prepared by Northwestern Mutual's disclosed experts, a June 10, 2014 letter from Dr. Gary Abrams, and an unspecified "large file of documents identified as 'Discover Documents,' provided by the attorneys for Dr. Wong Lai." (Lariviere Decl. at ¶ 7; Ex. C [Williams' Second Report at p. 1]

3

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION IN LIMINE NO. 2 TO EXCLUDE EXPERT OPINION OF AND REPORTS PREPARED BY DR. MARTIN WILLIAMS

1   (Lariviere Decl. at ¶ 3).  Plaintiff disclosed Psychologist Martin Dr. Williams, Ph.D. and produced

2   his report a week after the deadline ("First Report").  (*Id.* at ¶ 4; Ex. B [Dr. Williams' First Report]).

3   On June 20, 2014, Northwestern Mutual served rebuttal reports prepared by Drs. Logan,

4   Swanson and Reich.  (Lariviere Decl. at ¶ 5).  Their rebuttal specifically responded to the opinions

5   and conclusions reached by Dr. Williams in his May 12, 2014 report.  Plaintiff did not serve any

6   rebuttal disclosure or expert report by the June 20, 2014 deadline.  (*Id.* at ¶ 6).

7   On July 25, 2014, Plaintiff filed her Opposition to Northwestern Mutual's summary

8   judgment motion.  Plaintiff attached a July 16, 2014 report by Dr. Williams as "Exhibit 13" to her

9   Opposition ("Second Report").  (Lariviere Decl. at ¶ 7; Ex. C [Dr. Williams' Second Report]).

10  Plaintiff had not served or disclosed Dr. Williams report prior to filing her Opposition.  (*Id.*)

11  **C.  Dr. Williams' Second Report Offers New Information and Rebuts Northwestern Mutual's Experts**

12

13  In the Second Report, Dr. Williams' states that he evaluated Plaintiff again on July 16, 2014

14  for over one and a half hours and administered a test for malingering of psychological symptoms

15  called the M-FAST.  (Lariviere Decl. at ¶ 7; Ex. C).  Dr. Williams also noted that he was provided

16  with a number of reports including 2011 reports from Drs. Logan, Reich and Swanson, the doctors

17  expert reports dated in April and May 2014 [disclosed by Northwestern on the May 16, 2014

18  deadline], and "discovery records."  (*Id.*)  It is unclear what "discovery" was produced to Dr.

19  Williams, however, fact discovery closed on June 13, 2014 and all records were available to Dr.

20  Williams prior to the rebuttal deadline.

21  Dr. Williams makes a new diagnosis of performance anxiety regarding test taking.  He

22  responds to Northwestern Mutual's expert reports.  He conducted a further evaluation of Plaintiff

23  and administered an M-FAST test to detect malingering.  He now opines that based on the MFAST,

24  he can rule out malingering.  Dr. Williams opined that he could rule out other psychiatric disorders

25  based on his review of medical records that have been available to Plaintiff's counsel since 2013.

26  Plaintiff has not produced any of the results of the testing conducted by Dr. Williams.  (Lariviere

27  Decl. at ¶ 8).

28  **D.  Williams is Not Qualified to Opine on Traumatic Brain Injuries**

In response to an inquiry regarding whether he was "the best doctor to opine on [Plaintiff's] diagnosis condition," Dr. Williams testified "[a]s far as the mild brain injury, no, that is not my specialty." (Lariviere Decl. at ¶ 2; Ex. A at 78:9-16). Dr. Williams' Second Report provides that he was "unable to offer any opinions regarding [Plaintiff's] degree of neurological impairment ore regarding evidence of an actual traumatic brain injury." (Lariviere Decl. at ¶ 7; Ex. C at p. 2).

### III. LEGAL ARGUMENT

#### A. Dr. Williams Opinions as Set forth in the First Report Should be Excluded Because it is Unreliable

The Supreme Court and the Ninth Circuit have held that an expert's testimony is admissible only if (1) the expert is qualified; (2) his opinion is reliable; and (3) his testimony is relevant and will assist the trier of fact. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-595, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010). Experts must not only be qualified to testify on a specific matter, but their testimony must rest on a "reliable foundation." *Daubert,* 509 U.S. at 597; *see also United States v. 87.98 Acres*, 530 F.3d 899, 904 (9th Cir. Cal.2008). Expert testimony is reliable if it is "based upon sufficient facts or data, the product of reliable principles and methods, and the expert applies the principles and methods reliably to the facts of the case." *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1196 (D. Nev.2008); Fed.R.Evid. 702; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1374 (Fed. Cir.2013) (expert testimony based on insufficient data is inadmissible).

In *Daubert*, the United States Supreme Court set forth a non-exhaustive list of factors that may guide a court in assessing the reliability of offered testimony: "(1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standard controlling the techniques operation; and (4) whether the technique is generally accepted." 509 U.S. at 593-94. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), the Supreme Court clarified that the trial court "may consider one or more of the more specific factors that *Daubert* mentioned when doing so will determine that

1  testimony's reliability." *Id.* at 141. The trial judge must have considerable leeway in deciding how
2  to determine whether expert testimony in a particular case is reliable, "[t]hat is to say, a trial court
3  should consider the specific factors identified in *Daubert* where they are reasonable measures of the
4  reliability of expert testimony." *Kumho Tire*, 526 U.S. at 152.

5  Additionally, expert opinion is properly excluded where the expert's "opinion evidence is
6  connected to existing data only by the *ipse dixit* of the expert" where there is "too great an analytical
7  gap between the data and the opinion proffered." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512,
8  519 (1997); *Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. Haw.2002) (plaintiff's medical expert's
9  opinion on cause of medical condition properly excluded as unreliable because conclusions did not
10 follow from data). An expert's reasoning "must be based on objective, verifiable evidence and
11 scientific methodology of the kind traditionally used by experts in the field." *Domingo,* 289 F.3d at
12 607 (*citing Kennedy v. Collagen Corp.*,161 F.3d 1226, 1230 (9th Cir. 1998).

13 Here, Dr. Williams' First Report should be excluded as it is not reliable and is based on
14 insufficient data. In connection with Dr. Williams' preparation of the First Report, Plaintiff's
15 counsel placed drastic restrictions on the information Dr. Williams' was permitted to review.
16 Significantly, Dr. Williams was prevented from reviewing *any* evidence that has been developed in
17 this litigation and *any* of Plaintiff's medical records from UCSF, which span ten years from the onset
18 of Plaintiff's alleged disability. In fact, the only basis of Dr. Williams' opinions set forth in his First
19 Report was a 1.5 hour examination of Plaintiff, during which time no testing for malingering was
20 completed. Given the fact Dr. Williams would, had Plaintiff's counsel permitted, have had access to
21 a multitude of evidence regarding Plaintiff's claimed medical condition and limitations, Dr.
22 Williams' conclusions set forth in his First Report are unreliable as they are premised on insufficient
23 data. Fed.R.Evid. 702; *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d at 1196; *see
24 also Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 991 (D. Ariz.2000) (excluding medical
25 expert in part because expert had failed to review plaintiff's medical records); *MTX Communs. Corp.
26 v. LDDS/WorldCom, Inc.* ,132 F. Supp. 2d 289, 29 (S.D.N.Y.2001) (expert opinion excluded as
27 unreliable in part because expert failed to consider relevant evidence). The Court should order
28 inadmissible this report and any testimony regarding the conclusions reached in the report.

1       The unreliability of the First Report is buttressed by the Specialty Guidelines for Forensic
2  Psychology published by the American Psychiatric Association, which Dr. Williams himself helped
3  draft. Those guidelines provide that "[f]orensic practitioners ordinarily avoid relying solely on one
4  source of data and corroborate important data whenever feasible." Yet, Dr. Williams did rely solely
5  on one source of data, notwithstanding the fact multiple sources of evidence would have been
6  available to him had Plaintiff's counsel permitted. Because multiple sources of data were available
7  to Dr. Williams, had Plaintiff's counsel permitted, and because only one source of data was
8  considered (*i.e.* a 1.5 hour examination consisting of Plaintiff's subjective reporting of her
9  symptomatology and where no testing for malingering was completed), the First Report is not
10 methodologically sound and should be excluded on this additional basis as well. *Domingo,* 289 F.3d
11 at 607.

12 **B.    Dr. Williams' Opinions as Set Forth in the Second Report Should be Excluded as Untimely and Prejudicial and the Second Report and Dr. Williams'
13       Testimony Should be Excluded as Unreliable**

14      "[A] party must disclose to the other parties the identity of any witness it may use at trial to
15 present evidence under Federal Rule of Evidence 702, 703 or 705." Federal Rule of Civil Procedure
16 ("FRCP") 26(a)(2). FRCP 26(a)(2)(D) provides: "A party must make these disclosures at the times
17 and in the sequence that the court orders."

18      Rule 37(c)(1) provides that if a party fails to provide information as required under Rule
19 26(a), that party "is not allowed to use that information or witness to supply evidence on a motion, at
20 a hearing, or at a trial, unless the failure was substantially justified or is harmless. Plaintiff has the
21 burden of proving that her failure to timely disclose the Second Report is either substantially
22 justified or harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101 (9th Cir.
23 2001). Plaintiff has no justification for her failure to timely disclose the Second Report prior to the
24 June 20, 2014 rebuttal deadline as all the information addressed in that report were available prior to
25 that date. Further, while Rule 37 does not define "harmless," the 1993 Advisory Committee Notes
26 give examples of situations in which the failure to disclose may either be substantially justified or
27 harmless: "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential
28 witness known to all parties; the failure to list as a trial witness a person so listed by another party; or

1  the lack of knowledge of a pro se litigant of the requirements to make disclosures." The
2  circumstances of the Second Report is not comparable to any of these "harmless" situations.

3        Plaintiff's unjustified actions in disclosing Dr. Williams' rebuttal opinions after the Court's
4  deadlines violate the purpose of Rule 26(a) disclosures which is "to facilitate a fair contest with the
5  basic issues and facts disclosed to the fullest practictical extent." *Poulis-Minott v. Smith*, 388 F.3d
6  354, 358 (1st Cir. 2004). This conclusion is bolstered by the fact Plaintiff has failed to produce the
7  results of the M-FAST testing, further prejudicing Northwestern Mutual because their experts have
8  not been able to opine on the results.

9        Additionally, the Second Report and any testimony that Dr. Williams might offer are
10 unreliable, and therefore inadmissible, for the same reason as the First Report. The Second Report is
11 based on Dr. Williams' review of reports prepared by Northwestern Mutual's disclosed experts, a
12 June 10, 2014 letter from Dr. Gary Abrams, and an unspecified "large file of documents identified as
13 'Discover Documents,' provided by the attorneys for Dr. Wong Lai." Dr. Williams did not review
14 the deposition transcripts of two of Plaintiff's treating doctors, both of whom had withdrawn their
15 certification of Plaintiff's disability, *any* of Plaintiff's medical records, prior IME reports and test
16 results, or Plaintiff's wedding video, which depicts Plaintiff presenting significantly differently than
17 she presents in the medicolegal context. Based on Dr. Williams' failure to review the vast majority
18 of Plaintiff's medical records and other pertinent evidence set forth in this motion, the Second
19 Report and any testimony Dr. Williams might offer are unreliable because they are not based on
20 sufficient data, which would have been available to Dr. Williams had Plaintiff's counsel permitted.
21 *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d at 1196; Fed.R.Evid. 702.
22 Therefore, the Second Report and Dr. Williams' testimony should be excluded.

23     **C.**    **Dr. Williams Should be Precluded From Testifying Regarding his Review of Records Which Occurred After he Prepared the Second Report and After his**
24         **Deposition was Taken**

25       At the eleventh hour, and on the eve of the filing of this motion, Plaintiffs produced an
26 invoice dated October 23, 2014 indicating an "estimate" for Dr. Williams' "review of entire medical
27 file." (Lariviere Decl. at ¶ 9; Ex. D). While it is not clear when Dr. Williams reviewed Plaintiffs'
28 medical file, or even if the file has yet been reviewed, what is clear is that he did not review the

1  medical file prior to his August 20, 2014 deposition and after he prepared the Second Report.
2  "Expert witnesses are precluded from testifying at trial as to their opinions on subject matters upon
3  which they did not state opinions . . . at the time their depositions were taken." *Tan v. City & County*
4  *of San Francisco*, 2010 U.S. Dist. LEXIS 24668 at *8 (N.D. Cal.Feb. 26, 2010).  Thus, while
5  Northwestern Mutual maintains Dr. Williams' testimony should be precluded, if Dr. Williams is
6  permitted to testify at all, he should not be permitted to testify regarding his review of any
7  documents he had not reviewed prior to his preparation of the Second Report and his August 20,
8  2014 deposition.  Permitting Dr. Williams to do so would sandbag and substantially prejudice
9  Northwestern Mutual as it was not permitted to explore or challenge Dr. Williams' position at his
10 deposition.[2]

**D.   Dr. Williams Should be Excluded from Offering Any Opinion Regarding Plaintiff's Alleged Traumatic Brain Injury**

Dr. Williams is not a neurologist and he has stated that traumatic brain injuries are not his specialty and that he is unable to offer opinions regarding Plaintiff's alleged neurological impairment or whether she sustained an actual traumatic brain injury.  Accordingly, Williams should be precluded from testifying regarding Plaintiff's alleged traumatic brain injury because such testimony would not be based on Williams' "scientific, technical, or other specialized knowledge." Fed.R.Evid 702.

**IV.   CONCLUSION**

For the reasons stated above, Northwestern Mutual respectfully requests that the Court preclude Plaintiff, Dr. Williams, or any other witness from offering any trial testimony of the subject matter and opinions set forth in Dr. Williams' May 2014 and/or July 16, 2014 report.  In the alternative, the Court excludes Plaintiff, Dr. Williams, or any other witness from offering any trial testimony of the subject matter and opinions raised in his May 2014 and July 2014 reports.

---

[2] At his deposition, Dr. Williams testified that he had not reviewed a multitude of evidence in the possession of Plaintiff's counsel, including: Plaintiff's medical records from UCSF from 2005 to 2011, including neurological data; any of the IME reports conducted on Plaintiff from 2005 to 2011, which all found evidence of symptom exaggeration; Plaintiff's wedding reception video; Plaintiff's deposition video; surveillance footage of Plaintiff; the deposition transcript of Dr. Armas, Plaintiffs' treating psychologist for five years who withdrew her certification of Plaintiff's disability; the deposition transcript of Dr. Bitner, Plaintiff's treating psychiatrist, who also withdrew her certification of Plaintiff's disability.  (Id. at 32:3-33:20; 38:5-13; 93:2-11).  If Dr. Williams reviewed these documents subsequent to his deposition, he cannot be permitted to opine on those documents.

9

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION IN LIMINE NO. 2 TO EXCLUDE EXPERT OPINION OF AND REPORTS PREPARED BY DR. MARTIN WILLIAMS

Date: October 27, 2014

GORDON & REES, LLP

By */s/ Margie R. Lariviere*
Margie R. Lariviere
Tino X. Do
Attorneys for Defendants
NORTHWESTERN MUTUAL and THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

1088187/21153012v1

10

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY'S MOTION IN LIMINE NO. 2 TO EXCLUDE EXPERT OPINION OF AND REPORTS PREPARED BY DR. MARTIN WILLIAMS